**SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21943438 | D1 CM | 43557698 |

Rule 4 (B) Ohio

Rules of Civil Procedure

**EXHIBIT**

**A**

exhibitsticker.com

| | |
|---|---|
| DUANE KWIATKOWSKI | **PLAINTIFF** |
| **VS** | |
| BEST PET SUPPLIES, INC., ET AL. | **DEFENDANT** |

**SUMMONS**

BEST PET SUPPLIES, INC.
104-20 DUNKIRK STREET
JAMAICA NY 11412

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Said answer is required to be served on:**



**Plaintiff's Attorney**

MARK ABRAMOWITZ
7556 MENTOR AVE

MENTOR, OH 44060-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

MICHAEL P SHAUGHNESSY
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Jan 29, 2021 |



By _____

**Deputy**

COMPLAINT FILED   01/28/2021



CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**January 28, 2021 15:35**

By: MARK ABRAMOWITZ 0088145

Confirmation Nbr. 2168245

| | |
|---|---|
| DUANE KWIATKOWSKI | CV 21 943438 |
| vs. | |
| BEST PET SUPPLIES, INC., ET AL. | **Judge:** MICHAEL P. SHAUGHNESSY |

**Pages Filed:** 16

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| DUANE KWIATKOWSKI<br>11317 Lake Avenue<br>Cleveland, OH 44102<br><br>      Plaintiff,<br><br>vs.<br><br>BEST PET SUPPLIES, INC.<br>104-20 Dunkirk Street<br>Jamaica, NY 11412<br><br>Agent: Guang Hua Chenn<br>    739 46th Street<br>    Brooklyn, NY 11220<br><br>and<br><br>AMAZON.COM SERVICES LLC<br>410 Terry Avenue North<br>Seattle, WA 98109<br><br>Agent: Corporation Service Company<br>    300 Deschutes Way SW<br>    Suite 208 MC-CSC1<br>    Tumwater, WA 98501<br><br>and<br><br>MILES NORTH RANDALL, LLC<br>c/o registered agent<br>Edward A Hurtuk Esq<br>Hurtuk & Daroff Co LLP<br>6120 Parkland Blvd #100<br>Cleveland OH 44124<br><br>      Defendants. | CASE NO.<br><br>JUDGE<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Duane Kwiatkowski, by and through his counsel, alleges the following against

Defendants Best Pet Supplies, Inc., Amazon.com Services LLC, and Miles North Randall, LLC:

## I.  INTRODUCTION

   1.  This is a civil action to redress the serious and permanent injuries sustained by

Plaintiff Duane Kwiatkowski.

## II.    Parties

2.     At all times relevant, Plaintiff Duane Kwiatkowski was a resident of Cuyahoga County, State of Ohio.

3.     Defendant Best Pet Supplies, Inc. (hereinafter referred to as "Best Pet") is a domestic business corporation organized and existing under the laws of New York, with a principal place of business at 104-20 Dunkirk Street, Jamaica, New York 11412.  It may be served through its registered agent, Guang Hua Chenn, 739 46th Street, Brooklyn, New York 11220.

4.     Defendant Amazon.com Services LLC (hereinafter referred to as "Amazon") is a foreign limited liability company organized and existing under the laws of Delaware, with a principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.  It may be served through its registered agent, Corporation Service Company, 300 Deschutes Way SW, Suite 208 MC-CSC1, Tumwater, Washington 98501.

5.     Defendant Miles North Randall, LLC (hereinafter referred to as "Miles North") was an Ohio corporation, located Cuyahoga county, with business entity number 2204346 who owned and/or serviced the property in which the distribution center operated by Amazon that handled the product described in the Complaint below.

6.     Defendants as identified in paragraphs 3 and 4 (collectively referred to hereinafter as the "Manufacturing Defendants") worked together in producing, shipping, marketing, packaging, marketing, and delivering the product that is described throughout the rest of this Complaint.

7.     Defendants as identified in paragraphs 3 through 5 (collectively referred to hereinafter as the "Defendants") worked together in handling, warehousing, and storing of the product that is described throughout the rest of this Complaint.

2

## III.    JURISDICTION AND VENUE

8.    This Court has jurisdiction and venue because Defendants sell and distribute products, including the product in question, in Cuyahoga County, Ohio, it is the location of the injury, and one of the Defendants resides here.

## IV.    GENERAL ALLEGATIONS

### About Salmonella

9.    Salmonella is an enteric bacterium, which means that it lives in the intestinal tracts of human and other warm-blooded animals, including cattle.  Salmonella bacteria are usually transmitted to humans who consume foods contaminated with animal feces.  Such foods usually look and smell normal, meaning that a consumer has no warning of the fact of contamination.

10.    After being ingested, salmonella bacteria travel to the lumen of the small intestines, then penetrate the epithelium, multiply, and enter the blood.  This infection process – also referred to as the incubation period – usually takes 6 to 72 hours for the onset of symptoms.  As few as 15-20 cells of Salmonella bacteria can cause infection.

11.    The acute symptoms of salmonella gastroenteritis (or salmonellosis) include nausea, vomiting, diarrhea, fever, abdominal cramping and/or stomach pain, dysuria, muscle pain, fatigue, and dehydration.

12.    If medical treatment is provided to an infected person, it is typically treatment of the symptoms, such as prescribing anti-nausea or anti-diarrhea medications.  Some physicians prescribe antibiotics.  More severe cases may require intravenous fluids for treatment of dehydration, usually in an emergency room or urgent-care setting.  The elderly, infants, and those with impaired immune systems are more likely to experience a severe illness or death from ingesting salmonella bacteria.

3

**The Outbreak**

13.     On July 3, 2019, the U.S. Food and Drug Administration (FDA) identified an outbreak of Salmonella, and Pet Supplies Plus notified the public about a recall of all bulk pig ear products supplied to all its retail locations by several different vendors, including Lennox Intl Inc. Additional recalls have subsequently been issued by Brutus & Barnaby and Good Dogs USA (seller of "Chef Toby" products).

14.     During the multi-state investigation, testing conducted by the Michigan Department of Agriculture and Rural Development (MDARD) revealed that samples of pig ear pet treats collected from Pet Supplies Plus were positive for *Salmonella* London, *Salmonella* Typhimurium, *Salmonella* Newport, and *Salmonella* Infantis. Other strains, either identified in the more than 90 samples of the product, much of it collected in victims' homes, or victim stool specimens, have been positive for *Salmonella* Anatum, *Salmonella* Brandenburg, *Salmonella* Cerro, *Salmonella* Derby, *Salmonella* Give, *Salmonella* Infantis, *Salmonella* Livingstone, *Salmonella* London, *Salmonella* Newport, *Salmonella* Panama, *Salmonella* Rissen, *Salmonella* Seftenberg, *Salmonella* Typhimurium, *Salmonella* Uganda, *Salmonella* Worthington and *Salmonella* I 4,[5],12:i:-.

15.     As of August 27, 2019, the CDC reports that there are 143 cases of *human* infection tied to exposure to pig ear pet treats in 35 states.

16.     The states implicated in the pig ear salmonella outbreak include Alabama, Arizona, California, Colorado (3 cases), Connecticut, Florida (3 cases), Georgia (3 cases), Hawaii, Illinois (10 cases), Indiana (5 cases), Iowa (23 cases), Kansas (3 cases), Kentucky (6 cases), Louisiana, Maine, Maryland, Massachusetts (4 cases), Michigan (14 cases), Minnesota, Missouri (7 cases), New Hampshire, New Jersey (3 cases), New Mexico, New York (16 cases), North Carolina (2 cases), North Dakota, Ohio (8 cases), Oregon (3 cases), Pennsylvania (7 cases), South Carolina (2

4

cases), Texas (2 cases), Utah, Virginia, Washington, and Wisconsin (4 cases).

17.     The FDA has traced back some of the pig ear treats associated with cases of illness to sources in Argentina, Brazil, and Colombia, and issued Import Alert 72-03, entitle "Detention Without Physical Examination and Intensified Coverage of Pig Ears And Other Pet Treats Due To The Presence of Salmonella." The Import Alert restricts pig ear pet treats as the FDA is increasing its scrutiny of pig ears imported into the United States through sampling and examination.

18.     Steven M. Solomon, D.V.M., M.P.H., director of the FDA's Center for Veterinary Medicine, stated: "The FDA takes seriously our responsibility to protect both human and animal health . . . we believe the most effective way to protect public health at this time is to warn consumers to avoid purchasing or feeding their pets all pig ear treats and for retailers not to sell these products. We also continue to advise those who may have come into contact with potentially contaminated products to practice safe hygiene, including thoroughly washing hands and disinfecting any surfaces that have touched pig ear pet treats."

19.     The FDA and CDC have officially recommend that people avoid purchasing or feeding any pig ear pet treats at this time, and mandated that retailers, distributors and other operators who have offered pig ears for sale should wash and sanitize bulk bins, other storage containers, and any surfaces (e.g., counters, displays, floors) that have come into contact with potentially contaminated products. In addition, the FDA has advised all retailers, distributors and other operators to advise employees and customers to wash their hands after handling pet treats and food.

20.     The FDA also charged all retailers, distributors and other operators, which included all Defendants, to carefully dispose of pig ear pet treats in a secure container where animals, including wildlife, cannot access it, or to securely and safely store packaged product while they

5

determine the next steps to be taken.

21.     The FDA investigation, in coordination with the Centers for Disease Control and Prevention, is ongoing.

**Duane Kwiatkowski's Illness**

22.     On December 15, 2018, Plaintiff ordered Best Pet pig ear dog treats, which were the subject of the FDA investigation discussed above, for his dogs from Amazon.com Services LLC. They shipped from the property owned by Miles North on December 17th.

23.     Upon information and belief, at the time of Plaintiff purchased the pig ear dog treat Amazon stated on their website that the product was shipped and sold by Amazon, not a third-party merchant.

24.     Plaintiff routinely purchased these treats for Skyler and Frey, his two dogs.  As a result, he routinely handled the products.

25.     Both Skyler and Frey became ill, but Plaintiff never linked their illnesses to the pig ears.  As such, Plaintiff continued to dispense the pig ears to his dogs.

26.     On or about February 11, 2019, Plaintiff became ill with the symptoms of salmonellosis and sought medical attention.

27.     Plaintiff was hospitalized for four days with salmonella poisoning before being discharged for follow-up care.  He slowly recovered from his injuries.

6

## V.     CLAIMS ALLEGED

### FIRST CAUSE OF ACTION
**(Statutory Products Liability per *R.C.* § 2307 *et seq.*)**
**Manufacturing Defendants**

28.     Plaintiff restates all the foregoing allegations as if fully rewritten herein.

29.     The pig ear dog treats (hereinafter "product") and any and all components of the product involved in these injuries was/were a "product" within the meaning and scope of *R.C.* § 2307.71(A)(12)(a) and Manufacturing Defendants were the entities responsible for the design and formulation of the product and are each a "manufacturer" as that term is defined in *R.C* § 2307.71(A)(9).

30.     The product was defective in manufacture or construction pursuant to *R.C.* § 2307.74.

31.     The product was defective in design or formulation pursuant to *R.C.* § 2307.75.

32.     The product was defective due to inadequate warning or instruction pursuant to *R.C.* § 2307.76.

33.     The product was defective because it did not conform to representations pursuant to *R.C.* § 2307.77.

34.     Furthermore, Manufacturing Defendants failed in its affirmative duty to comply with all applicable health regulations, including the FDA's Good Manufacturing Practices Regulations, 21 C.F.R. part 110, subparts (A)-(G), and all statutory and regulatory provisions that applied to the manufacture, distribution, storage, and/or sale of the product or its ingredients, including but not limited to, the *Federal Food, Drug, and Cosmetics Act ("the Act")*, § 402(a), as codified at 21 U.S.C. § 342(a), which bans the manufacture, sale and distribution of any "adulterated" food, defining "food" as "articles of food or drink for man or other animals" (§

7

201(f)), and provisions in the *Ohio Revised Code,* § 3715.52, *et. seq.*, and *Ohio's Uniform Food Safety Code, Ohio Administrative Code,* § 3717-1, *et. seq.*, including at § 3717-1-03, which states "Food shall be safe, unadulterated, and . . . honestly presented," as well as § 901:5-7-01(H) and (I), *et seq.*, specifically including § 901:5-7-14 and § 901:5-7-15, pertaining specifically to pet foods.  Plaintiff is a member of the classes sought to be protected by the regulations and statutes identified above.

35.    As a direct and proximate result of these defects, Plaintiff suffered the injuries and damages set forth herein.

36.    Plaintiff's injuries and damages were the result of misconduct of the Manufacturing Defendants that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question.

37.    Manufacturing Defendants' misconduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

38.    Manufacturing Defendants are therefore liable for manufacturing, distributing, and marketing a defective and unreasonably dangerous product and introducing it into the stream of commerce.

**WHEREFORE**, Plaintiff demands judgment against Defendants for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages, and costs, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

8

## SECOND CAUSE OF ACTION
### (Supplier Liability per *R.C.* § 2307 *et seq.*)
### Manufacturing Defendants

39.    Plaintiff restates all the foregoing allegations as if fully rewritten herein.

40.    Manufacturing Defendants are each a "supplier" as defined by *R.C.* § 2307.71(A)(1
5).

41.    Manufacturing Defendants are negligent as the product did not conform to representations pursuant to *R.C.* § 2307.78(A).

42.    Manufacturing Defendants are otherwise liable as if they were a manufacturer pursuant to *R.C.* § 2307.78(B).

43.    As a direct and proximate result of Defendants' misconduct and negligence and/or the food product's failure to conform to representations of the Manufacturing Defendants, Plaintiff suffered the injuries and damages set forth herein.

44.    Plaintiff's injuries and damages were the result of misconduct of the Manufacturing Defendants that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question.

**WHEREFORE**, Plaintiff demands judgment against defendants for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages, and costs, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

9

## THIRD CAUSE OF ACTION
### (Failure to Warn per *R.C.* § 2307 *et seq.*)
### Manufacturing Defendants

45.     Plaintiff restates all the foregoing allegations as if fully rewritten herein.

46.     At all times,  Manufacturing Defendants were in the business of manufacturing, distributing, and marketing the product.

47.     There was a manufacturing defect in the product when it left Manufacturing Defendants' possession and control.  The product was defective because it contained a pathogen - *salmonella*.  The presence of the pathogen was a condition of the product that rendered it unreasonably dangerous.

48.     The product was defective because it contained a pathogen, and Manufacturing Defendants failed to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known.

49.     Manufacturing Defendants also failed to give adequate warnings and instructions to avoid such dangers.  Defendants' failure to provide such warnings and instructions rendered the product unreasonably dangerous.

50.     Further, Manufacturing Defendants failed to warn Plaintiff and the general public of the dangerous propensities of the product, particularly that it was contaminated with a pathogen, despite knowing or having reason to know of such dangers; and failed to timely disclose post-sale information concerning the dangers associated with the products.

51.     Defendants' conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

**WHEREFORE**, Plaintiff demands judgment against defendants for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000),

10

exclusive of interest and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages, and costs, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

### FOURTH CAUSE OF ACTION
**(Breach of Implied Warranties per *R.C.* § 2307 *et seq.*)**
**Manufacturing Defendants**

52.     Plaintiff restates all the foregoing allegations as if fully rewritten herein.

53.     Manufacturing Defendants are merchants who produce, manufacture, distribute, and market the product to consumers.  Plaintiff is a consumer.

54.     Manufacturing Defendants breached the implied warranty of merchantability by impliedly warranting that their product was of merchantable quality and fit for human consumption when it were not due to the conditions under which it was prepared, packaged, and held and due to the presence of a pathogen.  Plaintiff reasonably relied upon Manufacturing Defendants' skill and judgment as to whether the product was of merchantable quality and fit for human consumption.

55.     Manufacturing Defendants breached the implied warranty of fitness for a particular purpose, by holding out unreasonably dangerous product (i.e. product containing a pathogen) to the public as being safe when they knew or had reason to know that the product was not safe and that the public would use the product.

56.     Manufacturing Defendants did not disclaim these implied warranties.

57.     Manufacturing Defendants' conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

**WHEREFORE**, Plaintiff demands judgment against defendants for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000),

11

exclusive of interest and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages and costs, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

**FIFTH CAUSE OF ACTION**
**(Negligence and Negligence Per Se)**
**All Defendants**

58.     Plaintiff restates all the foregoing allegations as if fully rewritten herein.

59.     Defendants owed to Plaintiff a duty to properly handle and perform workmanlike handling of their product.

60.     This duty is separate and apart from the design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of the product.

61.     Defendants failed in their duty to provide such care when they allowed their product after being produced to be handled in a manner that allowed for the product to be sold to Plaintiff contaminated with salmonella.

62.      Defendants breached their duty in one or more of at least the following ways:

   a.     negligently handling the product;

   b.     failing to prevent human, insect, and/or animal feces from coming into contact with the product;

   c.     failing to store or hold the product in a manner to prevent it from becoming contaminated with filth which could render it injurious to health;

   d.     failing to adequately monitor the safety and sanitary conditions of their premises;

   e.     failing to apply their own policies and procedures to ensure the safety and sanitary conditions of their premises;

12

      f.      failing to take reasonable measures to prevent the transmission of a pathogen and related filth and adulteration from their premises;

      g.      failing to properly train and supervise their employees and agents to prevent the transmission of a pathogen and related filth and adulteration from its premises.

63.     Defendants' conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

**WHEREFORE**, Plaintiff demands judgment against defendants for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages, and costs, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

**SIXTH CAUSE OF ACTION**
**(Ohio Consumer Sales Practices Act *R.C.* 1345, *et seq.*)**
**All defendants**

64.     Plaintiff restates all the foregoing allegations as if fully rewritten herein.

65.     Defendants, advertised, labeled, marketed, promoted the product, and/or acquiescence to the general public's understanding representing the quality and use of its product to consumers, including Plaintiff.

66.     Defendants were engaged in the business of effecting or soliciting consumers to purchase the product including Plaintiff.

67.     Defendants knew or should have known that the product did not or would not conform to Defendants' representations, promises and/or the general public's understanding of its intended use.

13

68. Plaintiff relied on those representations and reputations listed above when deciding to purchase the product.

69. Defendants' actions and conduct constitute deceptive trade practices in the course of Defendants' business.

70. As a direct and proximate result of Defendants' unfair and/or deceptive conduct, in or affecting commerce, Plaintiff is entitled to recover treble damages and attorneys' fees from Defendants.

**WHEREFORE**, Plaintiff demands judgment against defendant for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages, treble damages, and costs, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

## DAMAGES

71. Plaintiff restates all the foregoing allegations as if fully rewritten herein.

72. Defendants' conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages, including but not limited to damages in the past and future for the following: pain and suffering, mental anguish, physical impairment, physical disfigurement, loss of enjoyment of life, medical and pharmaceutical expenses, travel and travel-related expenses, emotional distress, lost wages, lost earning capacity, loss of consortium, attorneys' fees (to the extent recoverable) and other general, special, ordinary, incidental damages, and consequential damages as would be anticipated to arise under the circumstances.

73. Plaintiff demands judgment against defendant for an award of compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000), exclusive of interest

14

and costs, an award of punitive damages, prejudgment interest, and post judgment interest, delay damages and costs, treble damages, reasonable attorneys' fees, and such other and further relief that the Court deems reasonable and just.

By:  /s/ *Mark M. Abramowitz*
Mark Abramowitz (0088145)
Mark A. DiCello (0063924)
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Ave.
Mentor, Ohio 44060
Phone:  440.953.8888
Fax:  440.953.9138
mabramowitz@dicellolevitt.com
madicello@dicellolevitt.com

Ron Simon*
Ron Simon & Associates
820 Gessner, Suite 1455
Houston, Texas 77024
Phone: 713.335.4900
Fax: 713.335.4949
ron@rsaalaw.com
***Counsel for Plaintiff***

*Pending Admission Pro Hac Vice*

15

## JURY DEMAND ENDORSEMENT

Plaintiffs demand a jury trial by the maximum number of jurors allowed.

**Respectfully submitted,**

By:  /s/ *Mark M. Abramowitz*
Mark M. Abramowitz, Esq. (0088145)
Ron Simon, Esq.*

*Pending Admission Pro Hac Vice*

16